UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GORDON JOHNSON,

        Plaintiff,

                                      Case No. 1:14-cv-672

v.

                                      Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
                                  /

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

Plaintiff was born on March 5, 1959 (AR 132).[1] He completed high school and had past employment in the logging industry as a logger/log cutter, truck driver and tractor/skidder operator (AR 29, 136). Plaintiff alleged a disability onset date of June 1, 2010 (AR 132). He identified his disabling conditions as headaches, ears ringing and short term memory problems (AR 136). The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on November 27, 2012 (AR 19-31). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923

(6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of June

3

1, 2010 and that he met the insured status requirements of the Act through December 31, 2015 (AR 21). At the second step, the ALJ found that plaintiff had the following severe impairments: headaches; tinnitus; and adjustment disorder with depressed mood (AR 21). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 22).

The ALJ decided at the fourth step that:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following: He is limited to simple, routine tasks at no set production pace. He can have occasional contact with coworkers and supervisors; no contact with the public. He is limited to a quiet work environment.

(AR 24). The ALJ also found that plaintiff was unable to perform any past relevant work (AR 29).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, light jobs in the national economy (AR 30). Specifically, plaintiff could perform the following work in the State of Michigan: custodian (13,000 jobs); and office clerk (11,000 jobs) (AR 30). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from June 1, 2010 (the alleged onset date) through November 27, 2012 (the date of the decision) (AR 30-31).

### III. ANALYSIS

Plaintiff raised two issues on appeal:

**A.   The ALJ's decision mischaracterizes plaintiff's headaches as controlled by medication.**

4

Plaintiff contends that the ALJ mischaracterized plaintiff's headaches as temporary and as being under control by medication. In reviewing plaintiff's medical record, the ALJ found that:

> The claimant has a history of brain abscesses and in June 2010 underwent right parietal occipital craniectomy with I&D of abscess, and left temporal craniectomy with I&D of abscess. Upon discharge, the claimant was neurologically stable. He began to regain his short-term memory and became more steady on his speech. His headache and memory was much improved. He was ambulating in the halls and on stairs with a steady gait (Ex. 1F). A November 2010 CT of the head with contrast disclosed a satisfactory post-op appearance.

(AR 24-25).

The ALJ noted that in August 2010, upon evaluation by Glen Peterson, Ph.D., plaintiff "reported no headaches at the time of the exam and when he does have headaches, he will take one or two Tylenol and that helps" (AR 25). The ALJ described plaintiff's subsequent reports of headaches as follows:

> In January 2011, the claimant reported chronic daily headaches and constant ringing in his ears. Jonathan Dennis, D.O., stated he believed the tinnitus goes hand in hand with the headaches. A future referral to an ENT was advised (Ex. 3F/3).
>
> In March 2011, the claimant reported continuous headaches on a daily basis. Elavil helped the headaches and helped him sleep, but he ran out of the medicine and did not think to call for a refill. Neurologist, Gregory Dardas, M.D., noted sensory and motor function of the face was unremarkable. Upper and lower extremity strength, gait, coordination, reflexes and sensory examinations were grossly normal. Nortriptyline was prescribed (Ex. 2F/8). An MRI of the brain revealed postsurgical changes with localized areas of encephalomalacia, presumably representing areas of previously treated and resected abscesses. There was no evidence of recurrent brain abscess (Ex. 2F/3-4).

(AR 25).

The ALJ summarized plaintiff's condition and treatment as follows:

> Overall, the claimant's treatment has been relatively conservative. Following the removal of the abscesses from his brain, his treatment has generally consisted of medications for his headaches, which have been relatively effective in controlling his symptoms. The claimant reported that Elavil medication helped his headaches (Ex. 2F/8). At one point, the claimant's primary care physician instructed the claimant to call his neurologist and get more information about what could be done for his daily headaches. If the neurologist had not offered anything, then the primary care physician would refer the claimant to a pain management specialist (Ex. 3F/l). The record contains no further evidence from the claimant's neurologist nor any evidence from a pain management specialist.

(AR 26).

Plaintiff contends that the ALJ failed to address the treatment for his chronic headaches reported in May, June and July of 2011 (AR 233, 258, 316 and 318) and his uncontrolled headaches reported in May and July of 2012 (AR 294, 303). At the administrative hearing held on November 6, 2012, plaintiff testified that he had daily headaches which were continuous, i.e., the headaches lasted 24 hours (AR 44-46). He testified that they feel like migraine headaches, with pain "all over" (AR 45). Plaintiff rated the pain level as a "six" which rose to "[p]robably a nine" when he hears "a lot of noise" (AR 46). At the hearing held on November 6, 2012, plaintiff testified that he saw Dr. Dennis once every three months and that he takes a number of medications including Cymbalta, nortriptyline, Depakote and a fourth medication which he could recall (AR 44-45).[2]

Despite this history of treatment, the ALJ's decision did not address plaintiff's medical history of headaches occurring after March 2011 (AR 25). Those records indicate that the headaches started when plaintiff had brain abscesses in May 2010 and were uncontrolled by May 2012 (AR 303). While the ALJ concluded that plaintiff's treatment has been "relatively conservative" and that the medications for his headaches have been "relatively effective in

---

[2] The Court notes that plaintiff was prescribed propranolol (Inderal) for his headaches in July 2012 (AR 294).

controlling his symptoms" (AR 26), this conclusion is unsupported by Dr. Dennis' records which reflect that plaintiff's headaches were "uncontrolled" in May 2012 (AR 303).

In this instance, the ALJ's failure to address plaintiff's treatment history during the 20 months prior the administrative hearing suggests that the ALJ did not consider the evidence as a whole. The Commissioner must provide a statement of evidence and reasons on which the decision is based. *See* 42 U.S.C. § 405(b)(1). While it is unnecessary for the ALJ to address every piece of medical evidence, *see Heston*, 245 F.3d at 534-35, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). By failing to address plaintiff's treatment history from April 2011 through November 2012, the ALJ has failed to articulate an analysis of the evidence which allows this Court to trace the path of her reasoning. Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should review plaintiff's medical records since March 2011 to determine the extent to which his headaches are controlled.

    **B. The ALJ's decision improperly evaluates the medical opinions on file.**

Plaintiff contends that the ALJ improperly evaluated the opinions of three non-treating psychologists, Dr. Peterson, Robert Baird, Ph.D., and Gregory North, Ph.D. Under the regulations, the ALJ is required to evaluate "every medical opinion" received "[r]egardless of the source." 20 C.F.R. § 404.1527(c). Because the ALJ did not give controlling weight to the opinion of plaintiff's treating physician (Dr. Dennis) under 20 C.F.R. § 404.1527(c)(2) (AR 27), the ALJ was required to weigh the other medical opinions considering the factors in 20 C.F.R. § 404.1527(c)

(examining relationship, treatment relationship, supportability, consistency, specialization and other factors "which tend to support or contradict the opinion"). *See* 20 C.F.R. § 404.1527(c)(1)-(6).

Examining physicians are not granted the presumption of controlling weight afforded to treating physicians under 20 C.F.R. § 404.1527(c). *See Coldiron v. Commissioner of Social Security*, 391 Fed. Appx. 435, 442 (6th Cir.2010). While the ALJ is required to give "good reasons" for the weight assigned a treating source's opinion, *Wilson*, 378 F.3d at 545, this articulation requirement does not apply when an ALJ rejects the report of a non-treating medical source. *See Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir.2007). Because Drs. Peterson, Baird and North were non-treating psychologists, the ALJ was not under any special obligation to defer to their opinions or to explain why he elected not to defer to them. *Karger v. Commissioner*, 414 Fed. Appx. 739, 744 (6th Cir. 2011). *See Peterson v. Commissioner*, 552 Fed. Appx. 533, 539 (6th Cir. 2014) (examining psychologist's opinion is not entitled to any special deference). Here, the record reflects that the ALJ considered the opinions of Drs. Peterson, Baird and North.

Dr. Peterson examined plaintiff for the Mescosta-Osceola Department of Human Services on August 4, 2010 (AR 25, 285-91). At that time, plaintiff was not taking any medications other than an antibiotic to reduce the remaining infection still left in the brain tissue (AR 25). Plaintiff's thought processes were logical and relevant, there was no evidence of any kind of thought disorder or dissociative state, plaintiff denied auditory or visual hallucinations, and the doctor did not observe any impaired motor activity (AR 25). Plaintiff did not report any headaches at the time of the exam and reported that when he does have headaches, he takes one or two Tylenol pills (AR 25). Plaintiff did not appear to have any cognitive deficits and appeared to have good skills in

8

computation (AR 25). Notably, Dr. Peterson concluded that plaintiff had no diagnosis (AR 25).

The ALJ evaluated the doctor's opinion as follows:

> In August 2010, Dr. Peterson opined that the claimant did not have any cognitive deficits, appeared to have good skills in computation, and appeared to be free of significant emotional instabilities. The claimant denies any significant psychological problems, appeared highly motivated to return to work, and hoped to do that as soon as he gets the headaches under control (Ex. 5F). Although this evaluation was performed for the Department of Human Services, the undersigned accords weight to this opinion. At the time of this evaluation, the claimant had undergone brain surgery two months prior and there were no mental limitations observed at this time.

(AR 27).

Dr. Baird examined plaintiff at the request of the Agency on July 29, 2011 (AR 25-26, 279-83). The ALJ considered the doctor's report, which he summarized as follows:

> The claimant reported never having failed to recognize a familiar person. He has never been lost or disoriented and never left things on the stove to burn. The claimant's stream of mental activity was spontaneous and organized. His emotional reaction was friendly, yet depressed. He was able to recall six digits forward and three digits backwards. He was unable to recall any of three items on a three-minute delay; however, with prompting he was able to recall all three. He was able to perform serial 7's and simple calculations. Dr. Baird diagnosed the claimant with adjustment disorder with depressed mood. A GAF of 49 was ascribed to the claimant's overall condition. Dr. Baird stated that there was insufficient data to designate a diagnosis of a cognitive or amnestic disorder and that it appeared the claimant's impairment was associated more with the medical condition associated with intense headaches and tinnitus (Ex. 4F).

(AR 25-26).

Defendant contends that Dr. Baird's report was not a medical opinion to be weighed by the ALJ. The Court agrees.

> Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.

9

20 C.F.R. § 404.1527(a)(2). Here, while Dr. Baird's report of his examination included a diagnosis ("adjustment disorder with depressed mood") and a prognosis ("fair to good"), the doctor did not render any judgments regarding the nature or severity of plaintiff's impairments, symptoms, what he could do despite his impairments, or his mental restrictions (AR 279-84). Indeed, the doctor's report was incomplete, noting that there was insufficient data to designate a diagnosis of a cognitive or amnestic disorder, and indicated the need for further objective data with respect to the prognosis (such as an assessment utilizing the Wechsler Memory Scale) (AR 282-83). In short, there was no opinion to weigh for purposes of 42 U.S.C. § 404.1527.

Dr. North examined plaintiff on August 27, 2012 (AR 26, 319-21). The ALJ addressed the doctor's opinion related to that examination as follows:

> In August 2012, Dr. North opined that the claimant's symptoms have developed to the point where he sleeps excessively and finds little interest in activities he once enjoyed. His difficulty with household chores is due to his memory issues and headaches. His memory issues are real and significant. The claimant is embarrassed by his disabilities and minimized these disabilities and his depressive state. Dr. North further opined that due to the claimant's physiological and emotional state, he is unable to carry out some daily living tasks, and that he would be unable to sustain employment due to physical conditions, as well as his depression (Ex. 7F). The undersigned accords little weight to this opinion, as the history and behavior observations are not consistent with the claimant's function report, or with that of his sisters report (Ex. 5E, 6E). Further, this opinion is not consistent with the claimant's testimony regarding his difficulty sleeping, daily activities, and his ability to perform household chores, such as laundry, in which he testified that it isn't that he cannot do it, but that it gives his mother something to do.

(AR 27-28).

The ALJ also addressed a medical statement which Dr. North completed on October 31, 2012 (based upon his August 27, 2012 examination):

> In October 2012, Dr. North also completed a medical statement regarding the claimant's mental ability to perform work-related activities. Dr. North opined that

>the claimant was 'unable to meet competitive standards" to "no useful ability to function" in his mental abilities and aptitudes needed to do unskilled work, semi-skilled work, and skilled work.  Dr. North opined that the claimant was "seriously limited" in his ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; was "unable to meet competitive standards" in his ability to interact appropriately with the general public; and had "no useful ability to function" in his ability to travel in unfamiliar places or use public transportation.  Dr. North further opined that the claimant would be absent from work more than four days per month, and could manage benefits in his own interest (Ex. 8F).  The undersigned accords little weight to this opinion, as there is no evidence to suggest that the claimant's mental impairments prevent him from performing work consistent with the residual functional capacity above.  Additionally, the severity of the claimant's mental abilities is not supported by the claimant's mental health treatment history and not consistent with other medical opinions.

(AR 28, 322-23).  Based on this record, the ALJ properly considered the medical records and opinions submitted by Drs. Peterson, Baird and North.  Accordingly, plaintiff's claim of error will be denied.

## IV.  CONCLUSION

For the reasons discussed, the Commissioner's decision will be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner is directed to review plaintiff's medical records since March 2011 to determine the extent to which his headaches are controlled.  A judgment consistent with this opinion will be issued forthwith.


Dated:  September 29, 2015          /s/ Ray Kent
                                    RAY KENT
                                    United States Magistrate Judge